# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**JULIE CONRAD,**
**Plaintiff Below, Petitioner**

**vs)  No. 14-1262** (Gilmer County 14-C-2)

**THE COUNCIL OF SENIOR CITIZENS OF**
**GILMER COUNTY, INC,**
**Defendant Below, Respondent**

**FILED**

**November 16, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner, Julie Conrad, by counsel, Karl Kolenich, appealed an October 28, 2014, order of the Circuit Court of Gilmer County, West Virginia, which dismissed her amended complaint for failure to state a claim for which relief can be granted. Respondent, The Council of Senior Citizens of Gilmer County, Inc., by counsel, Jan L. Fox and Ancil G. Ramey, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs, oral arguments, and the appendix record on appeal. We find no substantial question of law and therefore a memorandum decision affirming the judgment is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure. As explained below, we find that Petitioner failed to set forth sufficient facts to establish a constructive retaliatory discharge claim against Respondent.

### I.  Factual and Procedural History

Respondent hired Petitioner, an at-will employee, in February 2002 as a homemaker. In that position, Petitioner provided in-home services to clients assigned to her by Respondent. Petitioner remained in that position for eleven years until she resigned in January 2013. Petitioner alleged that she told her supervisor that she did not feel safe in her homemaking placement and could no longer work there because the client's family member[1] was flattening her tires, vandalizing her vehicle, and blocking the client's driveway so that she could not come and go from the worksite. Petitioner alleges that (1) she told her supervisor several times that she could no longer physically or emotionally handle caring for her client, and (2) her supervisor told her to "stick it out."

A year later, in January 2014, Petitioner filed this civil action against Respondent. In her amended complaint, Petitioner alleged (1) a constructive retaliatory discharge claim in violation

---

[1]The client's family member was initially alleged to be the client's brother-in-law, and later alleged to be the client's son-in-law.

1

of public policy, and (2) a claim for the tort of outrage. With regard to the first allegation, Petitioner claimed that Respondent violated the public policy articulated in West Virginia Code § 21-3-1, which provides, in part:

> Every employer shall furnish employment which shall be reasonably safe for the employees therein engaged and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render employment and the place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees: Provided, That as used in this section, the terms "safe" or "safety" as applied to any employment, place of employment, place of public assembly or public building, shall include, without being restricted hereby, conditions and methods of sanitation and hygiene reasonably necessary for the protection of the life, health, safety, or welfare of employees or the public.

Petitioner claimed the following in her amended complaint:

> On or about January 31, 2013, [Petitioner] reported to her employer [] after previously making numerous previous complaints that [Petitioner] could no longer work for her assigned client, in that the client's relative would consistently block the driveway off so [Petitioner] could not go to the home, flatten her tires, and vandalize her vehicle. [Petitioner] felt in danger and physically threatened. She stated to her supervisor that she could no longer care for the client at the home; she could no longer physically or emotionally handle it. She was directed by her employer to "stick it out."

> [Petitioner] felt as if she had no other choice but to quit or put herself and her property in danger and therefore with no choice, resigned.

> . . . .

> [Petitioner] felt she had no option other than to end her employment as the working conditions had become so intolerable that no person could be expected to endure them.

> [Respondent] was made fully aware of the working conditions and failed in any way to remedy them and/or to remove [Petitioner] from said conditions. Based upon information and belief, other placements would have been available in which [Respondent] could have placed [Petitioner].

Thereafter, Respondent filed a motion to dismiss the complaint pursuant to West Virginia Rule of Civil Procedure 12(b)(6). The circuit court held a hearing on the matter and granted Respondent's motion.[2] With regard to Petitioner's claim that West Virginia Code § 21-3-1

---

[2]In its order dismissing Petitioner's complaint, the circuit court found that "[b]oth parties have failed to address the overreaching issue at the crux of this case, as well as the core of any

2

creates a "substantial public policy" that imposes a duty upon an employer to protect an employee from a third party, the circuit court found that the statute failed to establish such a duty; it held that Respondent had no duty to protect Petitioner from acts that were not under Respondent's control, such as the acts committed by the client's family member in this case. The circuit court found this was particularly true where the client's family member's wrongful acts did not take place inside the workplace – the client's home. Finally, the circuit court found that Petitioner's amended complaint was so "sparsely populated with facts" that she failed to set forth enough information to outline the elements of a claim or to permit inferences to be drawn if those elements exist.[3]

## II. Governing Standard

Inasmuch as this case was decided on Respondent's motion to dismiss, West Virginia Rule of Civil Procedure 12(b)(6), we review this matter de novo and follow our long-established rule that "[f]or purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff, and its allegations are to be taken as true." *Cantley v. Lincoln Cty. Comm'n*, 221 W.Va. 468, 470, 655 S.E.2d 490, 492 (2007) (citing *John W. Lodge Distrib. Co. v. Texaco, Inc.*, 161 W.Va. 603, 605, 245 S.E.2d 157, 158 (1978)).

"The purpose of a motion under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure is to test the sufficiency of the complaint." *Cantley*, 221 W.Va. at 470, 655 S.E.2d at 492. This Court has held that

> [t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

---

negligence action: duty." However, Petitioner did not file a negligence action. We therefore agree with Petitioner that the circuit court erred by misapplying the negligence standard to her claim involving a constructive retaliatory discharge. Nevertheless, "[i]n determining whether a motion to dismiss . . . is appropriate, we apply the same test that the circuit court should have applied initially. We are not wed, therefore, to the lower court's rationale, but may rule on any alternate ground manifest in the record." *Conrad v. ARA Szabo*, 198 W.Va. 362, 369, 480 S.E.2d 801, 808 (1996) (citations omitted).

[3]With regard to Petitioner's tort of outrage claim, the circuit court findings were limited to only one statement, that "for the reasons cited above, it failed as a matter of law." Petitioner's assignments of error before this Court relate to her constructive retaliatory discharge claim; however, she addresses her tort of outrage claim in her reply brief. Rule 3(c) of the Rules of Appellate Procedure provides that a petition for appeal sets forth the "assignments of error relied upon on appeal[.]" We have made clear that this Court ordinarily will not address an argument not raised as an assignment of error. *See e.g., Canterbury v. Laird*, 221 W.Va. 453, 458, 655 S.E.2d 199, 204 (2007) (refusing to consider argument in appellant's brief not assigned as error in petition for appeal). Consequently, we decline to consider the dismissal of Petitioner's tort of outrage claim.

3

Syl. Pt. 3, *Chapman v. Kane Transfer Co.*, 160 W.Va. 530, 236 S.E.2d 207 (1977). With these principles in mind, we proceed to the merits of this case.

### III. Discussion

As this Court held in the syllabus of *Harless v. First National Bank*, 162 W.Va. 116, 246 S.E.2d 270 (1978):

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.[4]

(Footnote added). "To identify the sources of public policy for purposes of determining whether a retaliatory discharge[5] has occurred, we look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Syl. Pt. 2,

---

[4]Petitioner concedes that she quit her job. Accordingly, she had to establish "constructive discharge" as described in *Slack v. Kanawha County Housing and Redevelopment Authority*, 188 W.Va. 144, 423 S.E.2d 547 (1992). In *Slack*, this Court held that a plaintiff who quits and claims constructive discharge as part of a wrongful termination must demonstrate that the working climate was "so intolerable" that the plaintiff "was forced to leave his or her employment." *Id.* at 145, 423 S.E.2d at 548, Syl. Pt. 4, in part.

We note that Petitioner did not plead constructive discharge as an independent count in her complaint as "constructive discharge is not a cause of action in its own right." *Dickens v. Dep't of Consumer & Regulatory Affairs*, 298 F. App'x 2, 3 (D.C. Cir. 2008); *see also Jacobson v. Parda Fed. Credit Union*, 577 N.W.2d 881, 882 n.9 (Mich. 1998) (holding constructive discharge is not, itself, a cause of action, but rather a defense to a claim that employee voluntarily left employment). Rather, "[c]onstructive discharge doctrines simply extend liability to employers who indirectly effect a discharge that would have been forbidden by statute if done directly." *Simpson v. Fed. Mine Safety & Health Review Comm'n*, 842 F.2d 453, 461 (D.C. Cir. 1988); *see also Turner v. Anheuser-Busch, Inc.*, 876 P.2d 1022, 1030 (Cal. Ct. App. 1994) ("Even after establishing constructive discharge, an employee must independently prove a breach of contract or tort in connection with employment termination in order to obtain damages for wrongful discharge."); *Gormley v. Coca-Cola Enter.*, 109 P.3d 280, 282 (N.M. 2005) ("An employee who resigns from employment must prove constructive discharge as part of establishing a wrongful termination.").

[5]The term "retaliatory discharge" is used in this case as a shorthand term for an employee discharge that contravenes some substantial public policy principle. *See Slack*, 188 W.Va. at 152 n.8, 423 S.E.2d at 555 n.8.

4

*Birthisel v. Tri-Cities Health Servs. Corp.*, 188 W.Va. 371, 424 S.E.2d 606 (1992) (footnote added).[6]

On appeal, Petitioner maintains her amended complaint is sufficient to survive a Rule 12(b)(6) motion because she alleged facts that show Respondent knew it was sending her to work in an unsafe environment. Although Respondent did not create the alleged unsafe working condition, Petitioner alleged that Respondent required her to work in a known, unsafe working condition. She urges this Court to hold that she may proceed with her lawsuit alleging Respondent's actions violated the substantial public policy found in West Virginia Code § 21-3-1. Respondent counters that the circuit court correctly found that Petitioner failed to plead sufficient facts to support a viable cause of action. Respondent argues that Petitioner failed to identify a substantial public policy to support her claim under *Harless*.

We turn now to the statute at issue. In syllabus point two of *Henderson v. Meredith Lumber Co.*, 190 W.Va. 292, 438 S.E.2d 324 (1993), we explained:

> The goal of W.Va. Code 21-3-1 [1937] *et seq.* is to assure workers a reasonably safe workplace. The legislature placed such a responsibility on the employer and the owner. *The employer's duty is directly related to the employment activity that is controlled by the employer* and the owner's duty is limited to providing a reasonably safe workplace, unless the owner continues to exercise control of the place of employment.

(Emphasis added).

After careful review of appendix record before this Court, we find that Petitioner's amended complaint, construed in the light most favorable to her, failed to support a plausible constructive retaliatory discharge cause of action against Respondent. Thus, we hold that the amended complaint must be dismissed for failure to state a claim upon which relief can be

---

[6]In a series of cases arising out of a variety of factual settings in which a discharge clearly violated an express statutory objective or undermined a firmly established principle of public policy, this Court has recognized that an employer's traditional broad authority to discharge an at-will employee may be limited by considerations of substantial public policy. *See, e.g.*, Syl. Pt. 5, *Frohnapfel v. ArcelorMittal USA LLC*, 235 W.Va. 165, 772 S.E.2d 350 (2015) (holding employee who alleged he was discharged for reporting violations of permit issued under authority of West Virginia Water Pollution Control Act, West Virginia Code §§ 22-11-1 to -30 (2014), and making complaints to his employer about those permit violations, has established predicate substantial public policy); Syl. Pt. 5, *Tudor v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 111, 506 S.E.2d 554 (1997) (holding West Virginia Code of State Regulations § 64-12-14.2.4 (1987) sets forth specific statement of substantial public policy which contemplates that hospital will be properly staffed to ensure patients are protected from inadequate staffing practices); Syl. Pt. 2, *Lilly v. Overnight Transp. Co.*, 188 W.Va. 538, 425 S.E.2d 214 (1992) (holding substantial public policy is predicated upon West Virginia Code § 17C-15-1(a) (1991), § 17C-15-31 (1991) and § 24A-5-5(j) (1992), relating to operation of motor vehicle with brakes in unsafe working condition).

5

granted. What proves fatal to Petitioner's claim is the absence of alleged facts that demonstrate Respondent acted contrary to West Virginia Code § 21-3-1 and those actions led to her discharge. Specifically, Petitioner pled no facts to show that *her workplace* – the client's home – was unsafe. As the circuit court correctly found, "the only scenario remotely outlined in the Complaint is that a third-party allegedly vandalized [Petitioner's] vehicle in an unspecified area extraneous to the client's home, the sole confines of [Petitioner's] workplace."

Accordingly, this Court declines to address at this time the issue of whether a cause of action for retaliatory discharge in contravention of public policy may exist under West Virginia Code § 21-3-1, where an employee is discharged from employment in retaliation for making complaints to his/her employer about unsafe workplace conditions within the employer's control; under the facts presented herein, that issue is not presently before the Court.

In *Pack v. Van Meter*, 177 W.Va. 485, 354 S.E.2d 581 (1986), this Court was presented with the issue of whether the owner of a place of employment leased to an employer was liable to the tenant's injured employee for injuries arising out of a safety violation. In *Pack*, the plaintiff filed a personal injury action alleging the leased premises did not have handrails and safe treads on steps as required by West Virginia Code § 21-3-6 (1923). We concluded in *Pack* that this type of responsibility was reasonably shared by the employer and the owner of the place of employment. However, we acknowledged that "some of the provisions in W.Va. Code, 21-3-1 through -18, involve safety requirements that are clearly the responsibility of an employer because they involve *machines or other instrumentalities directly related to the employment activity* over which the owner of the place of employment exercises no control." 177 W.Va. at 490, 354 S.E.2d at 586 (emphasis added).

Applying *Henderson* and *Pack* to Petitioner's claim, the critical detail that Petitioner failed to assert was that Respondent failed in its statutory duty to control her *employment activity*. On that issue, Petitioner made no allegation that the client's home was unsafe or that she had legitimate safety concerns in her role as homemaker.

Other courts have recognized that employers should not be vulnerable to lawsuits when employees complain generally about threats from customers or the public. For instance, in *Muller v. Automobile Club of Southern California*, 71 Cal. Rptr. 2d 573 (Cal. Ct. App. 1998), *disapproved on other grounds by Colmenares v. Braemar Country Club, Inc.*, 63 P.3d 220 (Cal. Ct. App. 2003), the plaintiff employee, a claims adjustor, had been threatened in her workplace by the son of an insured.[7] She contended in her lawsuit that when she expressed to the defendant

---

[7]When Ms. Muller informed an insured that he would have to make two deductible payments on a claim for damage to his vehicle caused by more than one accident, the insured's son (Mr. Williams)

> became incensed by Muller's interpretation of his father's policy and made a series of angry and threatening calls to Muller in which he repeatedly berated and shouted obscenities at her. At some point during this series of calls, coworkers informed Muller that Williams was on his car telephone in the parking lot waiting for

employer her concerns about her safety in the workplace, she was terminated in violation of public policy. *Id.* at 577. The employer successfully moved for summary judgment. In affirming the judgment, the court of appeals in *Muller* concluded that the trial court "properly adjudicated" the plaintiff's cause of action for tortious discharge in violation of public policy in favor of the defendant. *Id.* at 590. The court explained that there "is no evidence in the record that [plaintiff] was subjected to unsafe working conditions in the . . . office where she worked." *Id.* According to the court, the plaintiff's "anxiety disorder did not overnight render her office an unsafe workplace. There is a certain risk of crime in any workplace to which the general public has access. However, unless crime in the workplace is highly foreseeable, employers cannot reasonably be expected to insure against it." *Id.* The court stated that the "voicing of a fear about one's safety in the workplace does not necessarily constitute a complaint about unsafe working conditions" under the labor code. *Id.* The plaintiff's "declaration shows only that she became frightened for her safety as a result of her unfortunate experience with [the insured's son] and expressed her fear" to the employer; "it is not evidence that the . . . office where she worked was actually unsafe within the meaning of" the labor code. *Id.*

Petitioner cites no authority from this Court, or other jurisdictions, to support the proposition that an employer's statutory obligation to provide a safe workplace extends outside the workplace to encompass third-party activity beyond the employer's control such that a plaintiff could maintain a cause of action. The public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one that does not extend this far. In the instant case, the alleged actions of the third-party were not related to "employment activity that [was] controlled by the employer[.]" W.Va Code § 21-3-1. Accordingly, Petitioner fails to meet her burden of pleading a sufficient constructive retaliatory discharge cause of action against Respondent.

## IV. Conclusion

For the reasons set forth above, this Court affirms the October 28, 2014, order of the Circuit Court of Gilmer County.

Affirmed.

**ISSUED:** November 16, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman

---

her to leave work. Consequently, a police officer escorted Muller to her car at the end of the workday.

*Muller*, 71 Cal. Rptr. 2d at 575-76.

**CONCURRING AND WRITING SEPARATELY:**

Justice Allen H. Loughry II

LOUGHRY, J., concurring, joined by KETCHUM, C.J.:

I concur in the majority's affirmance of the circuit court's order granting the respondent's motion to dismiss, but write separately because the majority opinion creates the false impression that West Virginia Code § 21-3-1 (2013) may, under differing facts, constitute a substantial public policy, actionable under *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 116, 246 S.E.2d 270, 271 (1978). The majority states that it does not reach this issue because the petitioner's allegations were insufficient regarding the applicability of the statute. However, it is abundantly clear that West Virginia Code § 21-3-1 and other similarly general statutory pronouncements are wholly insufficient to establish a substantial public policy upon which a retaliatory discharge may be based. While requiring employers to provide a reasonably safe workplace for its employees is an important and well-recognized public policy, it fails our long-established test for creating an *actionable* "substantial public policy" which may support a *Harless* action for retaliatory discharge.

The petitioner has attempted to assert a constructive retaliatory discharge claim based on her employer's alleged failure to provide her with a reasonably safe place to work, as required generally by West Virginia Code § 21-3-1. This statute provides, in pertinent part, that "[e]very employer shall furnish employment which shall be reasonably safe for the employees therein engaged . . . and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees[.]" W.Va. Code § 21-3-1. The petitioner, believing her workplace to be rendered unsafe by alleged vandalism and obstructionist behavior by her client's son-in-law, and being dissatisfied with her employer's response to these alleged actions, resigned from her employment and sued for damages. In asking this Court to recognize this statute as a substantial public policy that provides a basis for her constructive retaliatory discharge claim, the petitioner effectively asks this Court to create a new cause of action that would allow an employee to quit his or her job and then sue his or her employer for damages, alleging a working condition made the workplace "unsafe." Importantly, however, the broad and generally goal-oriented nature of West Virginia Code § 21-3-1simply cannot support such a claim, as illustrated below.

*Harless* forbids an employer from discharging an employee for any reason that contravenes a substantial public policy; to do so constitutes a "retaliatory discharge." In Syllabus Point 2 of *Birthisel v. Tri-Cities Health Services Corp.*, 188 W.Va. 371, 424 S.E.2d 606 (1992), we held that sources of substantial public policy sufficient to support a *Harless* claim may be found among "established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Critically, the holding in *Birthisel* makes clear that for purposes of determining what manner of "substantial public policy" may form the basis of such a claim, such policy must "provide specific guidance to a reasonable person." 188 W.Va. at 372, 424 S.E.2d at 607, syl. pt. 3, in part. In explaining the preeminence

8

of this requirement, this Court stated in *Birthisel* that "[a]n employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations." 188 W.Va. at 377, 424 S.E.2d at 612.

Just last year, this Court stated that "a *Harless*-based action requires more than simply raising the [spectre] of a potentially governing law." *Frohnapfel v. ArcelorMittal USA LLC*, 235 W.Va. 165, 170, 772 S.E.2d 350, 355 (2015). The United States District Court for the Northern District of West Virginia, commenting upon our decision in *Birthisel*, aptly described such insufficient statutory bases of public policy as "general admonitions which are aspirational in nature[.]" *Weirton Health Partners, LLC v. Yates*, 2010 WL 785647, at *4 (N.D. W.Va. Mar. 4, 2010). In rejecting precisely these types of aspirational policies, this Court explained in *Birthisel* that

> general admonitions as to the requirement of good care for patients by social workers do not constitute the type of substantial and clear public policy on which a retaliatory discharge claim can be based. If such a general standard could constitute a substantial public policy, it would enable a social worker to make a challenge to any type of procedure that the worker felt violated his or her sense of good service.

*Id.* at 378, 424 S.E.2d at 613. The statute urged here epitomizes a generally governing law that is woefully insufficient in its proscriptions and requirements so as to represent an *actionable* substantial public policy.

It is imperative to remember that our retaliatory discharge cause of action is an *exception* to the at-will employment doctrine.[1] As we held in *Harless*, a retaliatory discharge action merely "tempers" "[t]he rule that an employer has an absolute right to discharge an at will employee[.]" *See* 162 W.Va. at 116, 246 S.E.2d at 271, syllabus. Therefore, our requirement that a "substantial public policy" underlying a *Harless* action be specific is necessary to maintain the narrowly-drawn exception to at-will employment and to provide notice to employers as to the type of activity that is actionable thereunder. As the Supreme Court of Iowa observed: "Any effort to evaluate the public policy exception with generalized concepts of fairness and justice will result in an elimination of the at-will doctrine itself." *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 283 (Iowa 2000). Moreover, "it could unwittingly transform the public policy exception into a 'good faith and fair dealing' exception[.]" *Id.* at 283; *see also Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 375 (Ill. 2009) ("A broad, general statement of policy is inadequate to justify finding an exception to the general rule of at-will employment.").

---

[1] *See Wright v. Standard Ultramarine & Color Co.*, 141 W.Va. 368, 382, 90 S.E.2d 459, 469 (1955) ("Under the law governing the relation of master and servant, an employment unaffected by contractual or statutory provisions to the contrary, may be terminated, with or without cause, at the will of either party to the contract of employment.).

9

Unquestionably, the tort of retaliatory discharge is an attempt to strike "a proper balance . . . among the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out." *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878 (Ill. 1981). However, the Supreme Court of Connecticut wisely cautioned courts to be "mindful . . . not [to] lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation.'" *Sheets v. Teddy's Frosted Foods, Inc.*, 427 A.2d 385, 387-88 (Conn. 1980). Likewise, this Court must not blithely declare actionable "public policy" in an effort to protect employees from retaliatory discharge lest it "instead offer[] them a sword with which to coerce employers[.]" *Id.* at 389 (Cotter, J., dissenting). Our refusal to find general statutory pronouncements sufficient to support a cause of action finds company in many other jurisdictions. *See Corbin v. Sinclair Mktg., Inc.*, 684 P.2d 265 (Colo. App. 1984); *McCluskey v. Clark Oil & Ref. Corp.*, 498 N.E.2d 559 (Ill. App. Ct. 1986); *Adler v. Am. Standard Corp.*, 432 A.2d 464 (Md. 1981); *Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505 (N.J. 1980); *Geary v. United States Steel Corp.*, 319 A.2d 174 (Pa. 1974).

In sum, the majority, having missed an opportunity to reiterate the specificity requirements for an actionable "substantial public policy," has unfortunately left the false impression that a broad-based, aspirational statute, such as West Virginia Code § 21-3-1, might support a *Harless* claim under the proper facts. With that said, and for the reasons set forth herein, I respectfully concur.

10