IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2019 Term

_____

No. 18-0293

_____

FILED
**November 20, 2019**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

SHIRLEY STEWART BURNS,
Petitioner

v.

WEST VIRGINIA DEPARTMENT OF EDUCATION AND THE ARTS,
Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Joanna I. Tabit, Judge
No. 16-C-319

AFFIRMED

_____

Submitted: October 15, 2019
Filed: November 20, 2019

William V. DePaulo, Esq.                     Molly Poe, Esq.
Lewisburg, West Virginia                     Pullin, Fowler, Flannigan, Brown & Poe, PLLC
Counsel for Petitioner                       Charleston, West Virginia
                                             Counsel for Respondent

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 4, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2.      "The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syllabus Point 3, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

3.      "To state a claim for breach of the duty of reasonable accommodation under the West Virginia Human Rights Act, W.Va. Code, 5-11-9 (1992), a plaintiff must allege[ ] the following elements: (1) The plaintiff is a qualified person with a disability; (2) the employer was aware of the plaintiff's disability; (3) the plaintiff required an accommodation in order to perform the essential functions of a job; (4) a reasonable accommodation existed that met the plaintiff's needs; (5) the employer knew or should have known of the plaintiff's need and of the accommodation; and (6) the employer failed to provide the accommodation." Syllabus Point 2, *Skaggs v. Elk Run Coal Co.*, 198 W. Va. 51, 479 S.E.2d 561 (1996).

i

4.     "Under the West Virginia Human Rights Act, W. Va. Code, 5–11–9 (1992), reasonable accommodation means reasonable modifications or adjustments to be determined on a case-by-case basis which are designed as attempts to enable an individual with a disability to be hired or to remain in the position for which he or she was hired. The Human Rights Act does not necessarily require an employer to offer the precise accommodation an employee requests, at least so long as the employer offers some other accommodation that permits the employee to fully perform the job's essential functions." Syllabus Point 1, *Skaggs v. Elk Run Coal Co.*, 198 W. Va. 51, 479 S.E.2d 561 (1996).

5.     "A constructive discharge cause of action arises when the employee claims that because of age, race, sexual, or other unlawful discrimination, the employer has created a hostile working climate which was so intolerable that the employee was forced to leave his or her employment." Syllabus Point 4, *Slack v. Kanawha County Housing and Redevelopment Authority*, 188 W. Va. 144, 423 S.E.2d 547 (1992).

6.     "In order to prove a constructive discharge, a plaintiff must establish that working conditions created by or known to the employer were so intolerable that a reasonable person would be compelled to quit. It is not necessary, however, that a plaintiff prove that the employer's actions were taken with a specific intent to cause the plaintiff to quit." Syllabus Point 6, *Slack v. Kanawha County Housing and Redevelopment Authority*, 188 W. Va. 144, 423 S.E.2d 547 (1992).

WALKER, Chief Justice:

Petitioner Shirley Burns worked as a structural historian for the West Virginia Department of Education and the Arts (WVDEA)[1] until she resigned in March of 2014. Several months prior to that, she asked WVDEA to permit her to work weekends from home rather than requiring her to take paid leave for her weekly absences from work required for medical treatments. WVDEA did not accommodate that request, and Ms. Burns continued working and taking leave for her medical treatments until she suffered an asthma attack at work on January 14, 2014. After she did not return to work and ultimately resigned, she sued WVDEA under the West Virginia Human Rights Act (Act).[2] Ms. Burns alleges that she was unlawfully denied a reasonable accommodation and that she was constructively discharged as a result of her requested accommodation being denied. The parties both filed motions for summary judgment, agreeing that there were no material facts in dispute. The circuit court granted summary judgment in favor of the WVDEA on Ms. Burns's claims because (1) she did not require any accommodation to perform the essential functions of her job and was permitted to take paid leave for her weekly medical treatments;

---

[1] To avoid confusion, we refer to the WVDEA as the employer (and Respondent). We note that the West Virginia Division of Culture and History is a sub-part of the WVDEA, and the State Historic Preservation Office, the specific office employing Ms. Burns, is a sub-part of the West Virginia Division of Culture and History.

[2] W. Va. Code §§ 5-11-1 through –21.

1

and (2) her constructive discharge claim, premised entirely on the denial of her request for accommodation, failed as a matter of law. We affirm.

## I.     FACTS AND PROCEDURAL HISTORY

Ms. Burns worked as a historian and later a structural historian for the State Historic Preservation Office (SHPO), a sub-part of the West Virginia Division of Culture and History, beginning in 2006. She reviewed projects for compliance with the National Historic Preservation Act and other federal and state laws and examined the impact of projects on historic resources. Ms. Burns described her daily tasks as involving "[r]esearch, writing, talking on the phone, editing other workers' work[,] [e]diting for different projects that we put out[,]" and occasional site visits. By all accounts, Ms. Burns was a valued employee.

In March of 2013, Ms. Burns had an asthma attack that required hospitalization and bedrest for the better part of the month. Ms. Burns took leave under the Family Medical Leave Act (FMLA), which ran concurrently with her paid sick and annual leave available under WVDEA policy. Ms. Burns returned to work in April 2013, but was having trouble breathing while walking. Although Ms. Burns never made a formal request for an accommodation at that time, a fellow employee would meet Ms. Burns with a wheelchair at the loading dock, where her husband dropped her off for work, and take her to her office. Ms. Burns used the wheelchair throughout the day as necessary, and an employee would take her back to the loading dock at the end of the work day.

2

Due to her adult-onset respiratory illness and poor lung capacity, Ms. Burns's physician directed her to attend pulmonary rehabilitation/respiratory therapy twice a week beginning in April 2013. According to Ms. Burns, the therapy began at 1:00 p.m. and lasted until 3:30 or 4:00 p.m., and was offered only on Tuesdays and Thursdays. Ms. Burns utilized her accrued sick and annual leave to attend the appointments. In August 2013, when her paid leave was nearly depleted, Ms. Burns wrote a letter to Randall Reid-Smith, the Commissioner of the Division of Culture and History. The letter provides, in pertinent part,

> Part of my recovery includes Pulmonary Rehabilitation twice a week during the work week. . . . I have been participating in this treatment measure since April 2013. These sessions are not available on any other days than Tuesdays and Thursdays. I will be attending Pulmonary Rehabilitation twice weekly through at least January 2014 or later. This places me out of the office 7.5 hours during an average work week. On July 9, 2013, several accommodation suggestions from my family physician, Dr. Ashish Sheth, M.D., were submitted to the agency as part of FMLA documentation. Among these included a modified/flexible schedule and working from home during times of illness. I am requesting to perform some of my duties from home; specifically, at this time, proofreading and editing duties. . . . I am requesting that I be allowed to work on the proofreading and editing tasks from home for a few hours (3 to 6 hours) each weekend. . . . As are the standard operating procedures of the agency, I would request that any hours worked on the weekend be applied towards time that I will be out of the office the next week. I am requesting this accommodation under Title I of the Americans with Disabilities Act . . . .

Commissioner Reid-Smith responded by letter dated September 9, 2013, and requested information and a medical release so that he could contact Ms. Burns's physicians and gather more information in order to make a more informed decision. Ms.

3

Burns promptly cooperated and was also required to fill out an Americans with Disabilities Act (ADA) Request for Accommodation Form. To complete the form, Ms. Burns was asked to identify which job function she was having difficulty performing. She responded that she was "unable to work the set work schedule on Tuesdays and Thursdays due to medically necessitated and doctor ordered rehabilitation because of [her] disability." When asked what, if any, employment benefit she was having trouble accessing, Ms. Burns responded, in pertinent part,

> [t]he Division modifies the schedules of employees on a regular basis and allows other employees to routinely attend conferences, do site visitations and other work related duties on the weekend. Not being allowed to have a modified schedule, when the request would cost nothing and would benefit both the Division and me, is denying me the same benefit of similarly situated employees.

And, when asked to describe the accommodation she was requesting, Ms. Burns responded that she was requesting a modified schedule, specifically that she be permitted to work from home approximately three to six hours on the weekend to make up for some of the hours she missed during the work week to attend her respiratory therapy appointments.

Commissioner Reid-Smith then sent a letter to Ms. Burns's physician, Dr. Nasim Sheikh, asking six questions relating to the requested accommodation. These questions and Dr. Sheikh's responses are as follows:

4

[Question 1:]  What are the limitations for Mrs. Burns at this time?

[Answer:] The patient has severe bronchial asthma.  She is allergic to house dust mites DP & DF.  Long term exposure can exacerbate her bronchial asthma.

[Question 2:]  How will these limitations affect her job performance?

[Answer:]  I do not think that her ailment would affect her job performance as her work is mostly limited to mental utilization.

[Question 3:]  What specific job tasks are problematic as a result of these limitations?

[Answer:] Those jobs will only be problematic if she has to undergo strenuous physical activity or exposure to chemicals, allergens or irritants.

[Question 4:]  How long will she need accommodations?

[Answer:]  She will need accommodations until she improves her bronchial asthma.

[Question 5:]  Are there any alternatives for therapy that will accommodate the employee's work schedule?

[Answer:]  She is on immunotherapy once a week at this time along with anti-inflammatory topical medicine. Topical anti-inflammatory medications are the standard treatment.

[Question 6:]  Is Mrs. Burns permanently unable to perform these functions?

[Answer:]  It cannot be determined at this time as she is slowly improving.

Commissioner Reid-Smith testified that Ms. Burns was aware that her condition did not require an accommodation as of October 2013, based on these responses from Dr. Sheikh. But, he concedes that he, himself, did not formally respond to the request for an accommodation to inform her that it was denied.

On January 9, 2014, Petitioner exhausted her paid sick and annual leave. That same day, Kanawha County's water supply became contaminated due to a chemical leak. Ms. Burns, having heard that there was an odor associated with the contaminated water, took unpaid leave from work on Friday, January 10, 2014.[3] Ms. Burns returned to work on Monday, January 13, 2014.

As a result of the contaminated water, West Virginia American Water developed a written, publicized protocol dividing affected areas into sectors with instructions as to when particular government agencies, businesses, and residences should flush their pipes. January 13, 2014—the day Ms. Burns returned to work—was the day her employer was directed to flush its pipes. Ms. Burns noticed a faint odor that afternoon, and when she returned to work the following day, she had another asthma attack. She was treated in the emergency room and released later that day, but remained off work after she was released.

---

[3] Ms. Burns does not allege nor is there any evidence in the record to support that she requested to work from home that day as a reasonable accommodation for her disability as opposed to taking unpaid leave.

Although her paid sick and annual leave had been depleted as of January 9, 2014, Ms. Burns was approved for emergency medical leave beginning on January 14, 2014. She also was approved for the WVDEA's leave donation program, which provided her in excess of eighty additional hours of paid leave. But, Ms. Burns never returned to work. On March 11, 2014, she sent a letter to Commissioner Reid-Smith resigning her position, citing that "to continue to work in this environment, without any ADA accommodation, places my health at very substantial risk." She claimed that she was constructively discharged, given the return-to-work order issued by then-Governor Tomblin after the water crisis. Ms. Burns was paid for the excess donated leave in her final paycheck.

Ms. Burns then sued WVDEA alleging that it violated its duty to provide a reasonable accommodation under the Act, leading to her constructive discharge. She alleges that her request to work on the weekends at home was for a reasonable accommodation under the Act and that had her request been accommodated, she would have had sufficient paid sick or annual leave to enable her to stay at home on January 14, 2014, which would have prevented her from being exposed to the fumes from the water flushing process that she claims caused her asthma attack.

The parties brought cross-motions for summary judgment and agreed that, for purposes of their motions, there were no material facts in dispute. The circuit court granted summary judgment in favor of the WVDEA. In doing so, the circuit court found

7

that Ms. Burns did not request an accommodation for her disability to perform an essential function of her job, but rather an accommodation to her schedule so as not to require use of paid leave, and that the requested accommodation was not reasonable. Similarly, the circuit court found that Ms. Burns voluntarily resigned and failed to establish a claim for constructive discharge. Ms. Burns contests that order on appeal.

## II.    STANDARD OF REVIEW

In examining the circuit court's order, we apply a de novo standard of review[4] to the well-settled parameters for summary judgment:

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.[5]

Further, "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial."[6]   With this standard in mind, we turn to the parties' arguments.

---

[4] Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*.").

[5] *Id.* at syl. pt. 4.

[6] *Id.* at syl. pt. 3.

III.   DISCUSSION

Ms. Burns alleges that WVDEA failed to provide a reasonable accommodation for her disability, which ultimately led to her constructive discharge, all in violation of the Act. Those claims are interdependent, but we examine them separately. We turn first to Ms. Burns's reasonable accommodation claim.

## A.   *Ms. Burns's Failure-to-Accommodate Claim*

In determining whether an employer is required by law to accommodate an employee's disability, the question is not simply, "would this help the employee who has a qualifying disability and not impose too much of a burden on the employer?"  Instead, the appropriate inquiry in this context is whether Ms. Burns required an accommodation in the form of working from home in order to perform the essential functions of her job. Problematically, Ms. Burns's arguments overlook these nuances of the Act's requirements in a reasonable accommodation analysis.[7]  For that reason, she fails to grasp that while the accommodation she wanted may have been helpful, the accommodation she requested was not required to enable her to complete the essential functions of her job, and so cannot serve to impose liability on WVDEA under the Act.  To remedy this misunderstanding, we review the law of reasonable accommodation, generally, and then the particular law

---

[7] Although Ms. Burns did not bring claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 through 12213 (ADA), the rights under the ADA and the WVHRA are coextensive, and authorities analyzing reasonable accommodation under the ADA are, therefore, instructive. *See, e.g.*, *Kitchen v. Summers Continuous Care Ctr., LLC*, 552 F. Supp. 2d 589, 592 n.5 (S.D.W. Va. 2008); *Skaggs v. Elk Run Coal Co.*, 198 W. Va. 51, 68-69, 479 S.E.2d 561, 578-79 (1996).

relating to telecommuting and work-from-home arrangements as reasonable accommodations. We then apply that law to the facts and circumstances of this case, noting that analysis of reasonable accommodations under the Act is a case-by-case inquiry.[8]

### i.   *Reasonable Accommodation*

To begin we note that "[t]o comply with our Human Rights Act, an employer must make reasonable accommodations for known impairments to permit an employee to perform the essential functions of the job."[9] The West Virginia Human Rights Commission defines an accommodation as "reasonable modifications or adjustments to be determined on a case-by-case basis which are designed as attempts to enable an individual with a disability to be hired or to remain in the position for which he was hired."[10]

---

[8] *See* 77 W. Va. C.S.R. 1, §4.4, in part (defining "reasonable accommodation" in part, as "reasonable modifications or adjustments to be determined on a case-by-case basis. . . .")

[9] *Skaggs v. Elk Run Coal Co.*, 198 W.Va. 51, 65, 479 S.E.2d 561, 575 (1996). Of course, to invoke the duty of reasonable accommodation, the employee must also be a qualified individual with a disability as defined by the Act. *See id.* at syl. pt. 2.

[10] 77 W. Va. C.S.R. 1 § 4.4. Similarly, the ADA defines a reasonable accommodation as consisting of three categories: (1) modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; (2) modifications or adjustments to the work environment, or to the manner or circumstances under which the position is held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or (3) modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities. 29 C.F.R. § 1630.2.

If an employer fails to offer an employee with a qualifying disability a reasonable accommodation in order to accomplish an essential job function, then that employer may face liability under the Act. Outlining the elements of such a claim, we held in *Skaggs v. Elk Run Coal Co.* that

> [t]o state a claim for breach of the duty of reasonable accommodation under the West Virginia Human Rights Act, W.Va. Code, 5-11-9 (1992), a plaintiff must allege[ ] the following elements: (1) The plaintiff is a qualified person with a disability; (2) the employer was aware of the plaintiff's disability; (3) the plaintiff required an accommodation in order to perform the essential functions of a job; (4) a reasonable accommodation existed that met the plaintiff's needs; (5) the employer knew or should have known of the plaintiff's need and of the accommodation; and (6) the employer failed to provide the accommodation.[11]

The first two elements of *Skaggs* are not disputed in this case; WVDEA agrees that Ms. Burns has a disability, and that it was aware of her disability. The third and fourth elements of *Skaggs* are what the parties here dispute—whether Ms. Burns required an accommodation in order to perform the essential functions of her job, and whether a reasonable accommodation existed that met her needs.

We have had little need to embellish on the "requirement" prong of the third element of *Skaggs*. With the exception of this case, the vast majority of litigation that reaches our review pertains to the "essential functions" prong of the third element. And, the statutory language and *Skaggs* are abundantly clear that an employee with a qualifying

---

[11] Syl. Pt. 2, *Skaggs v. Elk Run Coal Co.*, 198 W.Va. 51, 479 S.E.2d 561 (1996).

11

disability cannot satisfy the elements of a failure-to-accommodate claim if he or she is fully capable of performing the essential functions of his or her job without accommodation to the limitations of his or her disability. The Seventh Circuit Court of Appeals, in *Brumfield v. City of Chicago*, succinctly captured our view in *Skaggs* that there must be a connection between the *need* for accommodation and the employee's ability to perform the essential functions of his job:

> [a]n employer need not accommodate a disability that is irrelevant to an employee's ability to perform the essential functions of her job – not because such an accommodation might be unreasonable, but because the employee is fully qualified for the job without accommodation and therefore is not entitled to an accommodation in the first place. . . . A disabled employee who is capable of performing the essential functions of a job in spite of her physical or mental limitations is qualified for the job and the ADA prevents the employer from discriminating against her on the basis of her irrelevant disability. But since the employee's limitations do not affect her ability to perform those essential functions, the employer's duty to accommodate is not implicated. [12]

It follows that Ms. Burns must first establish that she *required* an accommodation in order to perform the essential functions of her job to sustain her failure-to-accommodate claim.

The pertinent question here for analyzing the fourth element of *Skaggs* is whether a telework or work-from-home arrangement met Ms. Burns's putative need for accommodation for her disability. We note that the Equal Employment Opportunity

---

[12] 735 F.3d 619, 632–33 (7th Cir. 2013).

12

Commission (EEOC) has issued guidance regarding working at home and telework as reasonable accommodations under the ADA.[13]  This guidance provides that

> [n]ot all persons with disabilities need – or want – to work at home.  And not all jobs can be performed at home.  But, allowing an employee to work at home may be a reasonable accommodation *where the person's disability prevents successfully performing the job on-site* and the job, or parts of the job, can be performed at home without causing significant difficulty or expense.[14]

---

[13] *Work At Home/Telework as a Reasonable Accommodation*, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, https://www.eeoc.gov/facts/telework.html (last modified December 20, 2017).

We note that a recent case decided by the Court of Appeals for the Fifth Circuit, *Texas v. Equal Employment Opportunity Comm'n*, 933 F.3d 433 (5th Cir. 2019), discusses the legal effect of agency guidance by highlighting the pertinent distinctions between final agency action and general statements of policy.  Because our discussion of EEOC Guidance is prompted by Ms. Burns's erroneous reliance on it, and because there is no contention that WVDEA relied on EEOC Guidance in structuring its response to Ms. Burns's request for an accommodation, we need not consider the distinction made in that case.

Ms. Burns also relies on *EEOC 2001 Q&A Guide Re: Work at Home* https://www.eeoc.gov/eeoc/foia/letters/2001/ada_reas_accomm_5.html (last modified April 27, 2001), in which the EEOC Office of Legal Counsel answered a question relating to an employee who had requested to work from home and was concerned that she would instead be offered a leave of absence where the employer could backfill the employee's job.  The EEOC responded that "[b]oth leave and working at home are forms of reasonable accommodation." But, it also noted that under those circumstances it would be a violation of the ADA because requiring a leave of absence and backfilling the employee's position forced an employee to accept a less effective form of accommodation and deprived a qualified employee of his job.  Given that Ms. Burns's position was never backfilled and there is no allegation that her position was ever in jeopardy, we fail to understand the applicability of this particular EEOC guidance to the facts of this case.

[14] *Work At Home/Telework*, *supra* n.13 (emphasis added).

13

To aid an employer in determining whether someone may need to work at home as a reasonable accommodation, the guidance states that "[t]he individual must explain what *limitations from the disability make it difficult to do the job in the workplace*, and how the job could still be performed from the employee's home."[15]

The EEOC emphasizes in its guidance that an employer may select any effective accommodation, even if it is not the one preferred by the employee.[16] We adopted this axiom in Syllabus Point 1 of *Skaggs*:

> Under the West Virginia Human Rights Act, W. Va.Code, 5–11–9 (1992), reasonable accommodation means reasonable modifications or adjustments to be determined on a case-by-case basis which are designed as attempts to enable an individual with a disability to be hired or to remain in the position for which he or she was hired. *The Human Rights Act does not necessarily require an employer to offer the precise accommodation an employee requests, at least so long as the*

---

[15] *Id.* (emphasis added). *See also*, *Accommodation and Compliance: Telework*, JOB ACCOMMODATION NETWORK, https://askjan.org/topics/telework.cfm. The Job Accommodation Network is a service provided by the U.S. Department of Labor's Office of Disability Employment Policy. That guidance, based on EEOC's interpretation of telework/work at home accommodations, provides that telework is often suggested as an accommodation solution to address work-related barriers that can include: difficulty commuting to and from work due to disability-related reasons; limited access to accessible parking; limited worksite or workstation accessibility; environmental issues (e.g., construction activities, exposure to chemicals/irritants, temperature sensitivity, problematic lighting, etc.); lack of privacy to manage personal/medical needs, like using the restroom, taking medication, or receiving treatment; rigid work schedule; exposure to viruses and bacteria; or workplace distractions affecting concentration.

[16] *Id.*

*employer offers some other accommodation that permits the employee to fully perform the job's essential functions.*[17]

In sum, an employer must offer an employee with a qualifying disability a reasonable accommodation that enables the employee to perform the essential functions of his job. Depending on the particular circumstances of each case, telework or another work-from-home arrangement may be a reasonable accommodation. But, an employer is not required to offer the exact accommodation requested by the employee. Rather, it must offer one that is effective at addressing whatever limitation precludes the employee from performing the essential functions of his or her job, provided that that reasonable accommodation exists.[18]

### ii.    *Ms. Burns Did Not Require a Work-From-Home Accommodation*

Ms. Burns alleges that WVDEA failed to provide a reasonable accommodation to her disability in violation of the Act. As summarized above, the relevant inquiry is whether Ms. Burns required the accommodation of working from home on the weekends in order to perform the essential functions of her position. Because she was already permitted to miss work to attend her appointments, and her requested accommodation served no other purpose than to allow her to avoid using her accrued paid

---

[17] Syl. Pt. 1, *Skaggs*, 198 W.Va. 51, 479 S.E.2d 561 (emphasis added).

[18] Though not relevant for the purposes of our analysis, the "reasonableness" of an accommodation is viewed in balance with an employer's prospective hardship in implementing that accommodation.

sick and annual leave, we find that she did not, and for that reason is entitled to no relief under the Act on her failure-to-accommodate claim.

Beginning with Ms. Burns's request for accommodation, we note that she was requesting to work from home on the weekends to make up missed time during the week she spent attending her medical appointments so as not to require use of paid leave to attend them. Problematically, Ms. Burns confuses her desire for a particular accommodation with the need for one. She essentially argues that because an accommodation existed that she believed to be reasonable (i.e., the WVDEA could have let her work from home on weekends to make up missed time during the week), the WVDEA had an obligation under the Act to provide her with that accommodation for her disability or to engage in an interactive process through which to accomplish her need to make up missed time during the week. This analysis overlooks the *need* for an accommodation captured in element three of *Skaggs*—"the plaintiff *required* an accommodation *in order to perform the essential functions of [her] job.*"[19]

Dr. Sheikh confirmed in his responses to Commissioner Reid-Smith's inquiry that her condition would not affect her job performance because her work was limited to mental tasks. The only job tasks that he listed as potentially problematic were any job tasks that would require Ms. Burns to undergo strenuous physical activity or

---

[19] Syl. Pt. 2, *Skaggs*, 198 W. Va. 51, 479 S.E.2d 561 (emphasis added).

exposure to chemicals, allergens or irritants. Ms. Burns testified in her deposition that there was nothing about being *in* the office that affected her condition; in other words, she was not exposed to chemicals, allergens or irritants that might exacerbate the condition that prompted her to request permission to work from home.[20] And, to the extent Ms. Burns was required to exert herself during the work day, use of the wheelchair accommodated that need.

Ms. Burns contends that Dr. Sheikh's response to question number four that "she will need accommodations until she improves her bronchial asthma" dispels any notion that she did not require an accommodation. We disagree. A plain reading of that response clearly refers back to any accommodation necessary to help her avoid chemicals, allergens or irritants, which Ms. Burns agrees were not at issue in her request for accommodation. Ms. Burns further contends that her family physician, who completed Ms. Burns's FMLA paperwork, suggested a modified/flexible schedule as an accommodation. However, that physician recommended a modified/flexible schedule as an accommodation "during times of illness[,]" not modified scheduling in the absence of illness so that Ms. Burns could avoid using accrued paid sick and annual leave.

We find Ms. Burns's reliance on the EEOC guidance on telework and work-from-home arrangements, quoted above, to be misplaced. She presupposes that if a job

---

[20] *See infra* for discussion on the water contamination exposure.

17

can be done from home or can be completed on a modified schedule, then an employer is required to offer that option to an employee with a qualifying disability.  But, the inquiry is much more nuanced than that, as is demonstrated in the EEOC's guidance, which states that "allowing an employee to work at home may be a reasonable accommodation *where the person's disability prevents successfully performing the job on-site* and the job, or parts of the job, can be performed at home without causing significant difficulty or expense."[21]

An example provided by the EEOC demonstrates when a telecommuting arrangement can, and cannot, meet an employee's need for accommodation.  In this example, a disabled employee is unable to reach work at the designated start time because his disability requires him to take paratransit.[22]  In that instance, the EEOC instructs that the employer should allow the employee to modify his schedule to begin work later to comport with the paratransit schedule if it prevents him from reaching work on time, but is not required to allow that employee to work from home.[23]  In doing so, it reiterates that the employer may select any effective accommodation, even if it is not the one preferred by the employee.[24]

---

[21] *Work At Home/Telework as a Reasonable Accommodation supra*, n.13 (emphasis added).

[22] *Id.*

[23] *Id.*

[24] *Id.*

18

Inherent in that guidance and example, and what Ms. Burns fails to appreciate in relying on this example to support her position, is that in this example, the disability itself *necessitates* the modified schedule. That is, because of the employee's disability and reliance on paratransit, he is unable, physically, to get to work at the designated time, and for that reason the employer must accommodate him so as to perform an essential function of the job—getting to work on time.

Indisputably, Ms. Burns was capable of performing all essential functions of her job without her requested accommodation and had no physical or mental limitations that required her to work from home. Ms. Burns fully intended to (and did) attend work every day, without issue, with the exception of the time missed from her appointments up until the time of the water contamination in January 2014. Ms. Burns's requested accommodation—that she be allowed to work at home on the weekend and "that any hours worked on the weekend be applied towards time that I will be out of the office next week"—did not alleviate a physical or mental limitation of her disability, but served only to alleviate a dwindling supply of paid leave, and her need to attend medical appointments relating to her disability was already being accommodated.

In other words, while her disability *did* prompt the therapy appointments for which she needed to miss work to attend, the WVDEA was already accommodating that need in the form of accrued paid sick and annual leave, FMLA intermittent leave, and

19

emergency leave.[25] She does not allege that she was ever precluded from attending those appointments or otherwise discriminated against or penalized for attending them. Ms. Burns did not *require* an additional accommodation to allow her to work from home simply because it would have accomplished a purpose beneficial to Ms. Burns. Succinctly,

> [t]he Human Rights Act does not necessarily require an employer to offer the precise accommodation an employee requests, at least so long as the employer offers some other accommodation that permits the employee to fully perform the job's essential functions.[26]

Finally, we can find no authority to support the notion that the WVDEA was required by law to grant an accommodation to Ms. Burns's schedule in order to enable her to avoid using accrued paid sick and annual leave and then unpaid leave to attend appointments where other, similarly-situated employees were required to do the same.[27]

---

[25] *See Employer-Provided Leave and the Americans with Disabilities Act*, U.S. Equal Employment Opportunity Commission (May 9, 2016):

> [R]equests for leave related to disability can often fall under existing employer policies. In those cases, the employer's obligation is to provide persons with disabilities access to those policies on equal terms as similarly situated individuals. That is not the end of an employer's obligation under the ADA though. An employer must consider providing <u>unpaid</u> leave to an employee with a disability as a reasonable accommodation if the employee requires it, and so long as it does not create an undue hardship for the employer.

(emphasis in original).

[26] Syl. Pt. 1, in part, *Skaggs*, 198 W.Va. 51, 479 S.E.2d 561.

[27] Ms. Burns does not allege that other employees were permitted to work at home on weekends to make up time missed for appointments during the week. Rather, she alleges that other employees were "permitted" to work on the weekends, generally. Without conceding that such weekend work is necessarily relevant to Ms. Burns's request

Rather, EEOC Enforcement Guidance pertaining to reasonable accommodations reinforces

the propriety of paid and then unpaid leave as a reasonable accommodation:

> [p]ermitting the use of accrued paid leave, or unpaid leave, is a form of reasonable accommodation when necessitated by an employee's disability. An employer does not have to provide paid leave beyond that which is provided to similarly-situated employees. Employers should allow an employee with a disability to exhaust accrued paid leave first and then provide unpaid leave. [28]

Likewise,

> [e]mployees with disabilities must be provided with access to leave on the same basis as all other similarly-situated employees. Many employers offer leave—paid and unpaid— as an employee benefit. . . . Reasonable accommodation does not require an employer to provide *paid* leave beyond what it provides as part of its paid leave policy. [29]

The Fourth Circuit Court of Appeals came to the same conclusion in *Myers*

*v. Hose*, noting that "[t]he interpretive guidelines for the ADA reinforce the conclusion that

---

to make up missed appointment times, we note that the individuals to whom Ms. Burns refers are event staff whose work tasks specifically require weekend attendance, employees who attend conferences (which WVDEA denies), or employees who are otherwise not similarly-situated to Ms. Burns.

[28] *Enforcement Guidance: Reasonable Accommodation Under the Americans with Disabilities Act*, U.S. Equal Employment Opportunity Commission No. 915.002, available at https://www.eeoc.gov/policy/docs/accommodation.html (last modified May 9, 2019) (footnotes omitted). We note that the ADA was amended in 2008, after this document was originally issued. However, the amendments undertaken broadened the statutory definition of disability rather than substantively changing the duty of reasonable accommodation for the purposes of our analysis.

[29] *Employer-Provided Leave and the Americans with Disabilities Act*, *supra* n.25 (emphasis in original).

reasonable accommodation does not include unscheduled paid leave. *See* 29 C.F.R. §

1630.2(o) (Appendix) ('[O]ther accommodations could include permitting the use of

*accrued paid leave* or providing *additional unpaid leave* for necessary treatment. . . .'

(emphasis added)."[30]

We acknowledge that once Ms. Burns's paid leave was exhausted, she was

left with only unpaid leave, which is a difficult and often unsustainable position. [31]  But,

under the WVDEA leave policy, similarly-situated employees with medical appointments

are also required to take accrued paid leave, and once that is exhausted, to seek unpaid

leave to attend those appointments.[32]  Thus, while perhaps WVDEA *could* have allowed

Ms. Burns to work from home to help her avoid the necessity of using her paid leave,[33] Ms.

---

[30] *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995), *superseded by statute on other grounds*, as recognized in *Peninsula Regional Med. Ctr. v. Adkins*, 137 A.3d 211 (Md. 2016).

[31] Ms. Burns continued to accrue paid leave for hours worked in the office. Due to her participation in WVDEA's donated leave program, Ms. Burns appears to have only taken one day of unpaid leave.

[32] The WVDEA follows the leave policy of the State of West Virginia promulgated by the Division of Personnel, which requires all employees to take accrued sick or annual leave for medical appointments.  Once the employee has exhausted that paid leave and FMLA leave, if applicable, they may apply for emergency medical leave, which protects an employee's job for six months.

[33] The majority of Ms. Burns's argument focuses on her ability to perform her work tasks at home, and that there is no undue burden to the employer for letting her do so. Ignoring that WVDEA's position is that no employees were permitted to work from home pursuant to agency policy and to grant the requested accommodation would put Ms. Burns in a better position than other employees required to take paid leave for their appointments, Ms. Burns's "reasonableness" argument in this regard is irrelevant given that she cannot

Burns has not pointed us to *any* court that has interpreted the applicable failure-to-accommodate provisions as *requiring* the WVDEA to do so.

Because Ms. Burns did not require an accommodation to work from home due to some environmental factor or other physical or mental limitation of her disability, and was already provided leave to attend her appointments, we find that she has failed to establish the third element of *Skaggs*. For that reason, the duty to accommodate was not triggered, and the circuit court appropriately granted summary judgment on Ms. Burns's failure-to-accommodate claim.

## B.    Ms. Burns's Constructive Discharge Claim

Ms. Burns's second claim is for constructive discharge. The following standard governs our analysis of Ms. Burns's constructive discharge claim: "A constructive discharge cause of action arises when the employee claims that because of age, race, sexual, or other unlawful discrimination, the employer has created a hostile working climate which was so intolerable that the employee was forced to leave his or her employment."[34] Further,

> [i]n order to prove a constructive discharge, a plaintiff must establish that working conditions created by or known to the employer were so intolerable that a reasonable person would be compelled to quit. It is not necessary, however, that

establish the need for a reasonable accommodation to perform the essential functions of her job in the first place.

[34] Syl. Pt. 4, *Slack v. Kanawha County Housing and Redevelopment Auth.*, 188 W. Va. 144, 423 S.E.2d 547 (1992).

23

a plaintiff prove that the employer's actions were taken with a specific intent to cause the plaintiff to quit.[35]

Specifically, Ms. Burns alleges that had her reasonable accommodation request been granted, she would have had sufficient accrued leave as of January 2014 to take off the day on which she was exposed to the fumes related to the water contamination. We reiterate at the outset that there was no underlying duty to provide Ms. Burns with her requested accommodation. So, to the extent her constructive discharge claim deals in hypotheticals and speculation relating to her ability to have taken paid leave on the day the SHPO flushed its pipes, we find no merit in it.[36]

As to her contention that the failure to grant her accommodation placed her health at substantial risk, first, Ms. Burns was never prevented from attending her appointments or otherwise discriminated against for attending them so as to place her health at risk. Second, as discussed at length above, her requested accommodation, even if granted, did not address any aspect of the SHPO office itself. In other words, there is no connection between the requested accommodation and the ill health effects she suffered due to MCHM exposure such that the denial of her accommodation can be said to have

---

[35] *Id.* at syl. pt. 6.

[36] Ms. Burns took unpaid leave on Friday, January 10, 2014, but returned to work the following Monday, January 13, 2014, claiming that she had no idea what day the pipes were scheduled to be flushed. As posed pointedly by the circuit court: "[t]his begs the question: If plaintiff did not know when the Culture Center was flushing its pipes, how would she have known to take that day off, paid or unpaid?"

24

resulted in such an intolerable environment that any reasonable person would have left their employment.

Finally, insofar as the Governor's "back-to-work order" ordered Ms. Burns back to work when she was more susceptible than others to ill-effects from the fumes, we note that Ms. Burns returned to work for only one-and-a half days post-contamination. Ms. Burns did not return to work after January 14, 2014, until she voluntarily resigned her employment on March 11, 2014. During that time she was on medical leave and was not required by WVDEA to return to work at any time prior to her voluntary resignation. Accordingly, we do not find that Ms. Burns can establish, in one-and-a-half days, such an intolerable environment as a result of that "back-to-work order" so as to maintain a constructive discharge claim against the WVDEA.

## IV.    CONCLUSION

For the foregoing reasons, we find that the circuit court properly granted summary judgment on Ms. Burns's failure-to-accommodate and constructive discharge claims and so affirm the March 6, 2018 order of the Circuit Court of Kanawha County.

Affirmed.